**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DARREN CLARK**, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Civ. Action No.: 12-7763 (FLW)(TJB) |
| | : |
| **STATE OF NEW JERSEY** | :   **OPINION** |
| **DEPARTMENT OF HEALTH OFFICE** | : |
| **OF TOBACCO CONTROL** and **STATE** | : |
| **OF NEW JERSEY CIVIL SERVICE** | : |
| **COMMISSION** | : |
| | : |
| Defendants. | :: |

**WOLFSON**, **United States District Judge**

*Pro se* plaintiff Darren Clark ("Plaintiff") brings this employment discrimination suit against Defendants State of New Jersey Department of Health Office of Tobacco Control (the "OTC") and State of New Jersey Civil Service Commission (the "CSC," collectively "Defendants"), alleging a violation of the Equal Pay Act of 1963 (the "EPA"), 29 U.S.C. § 206(d). Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim, failure to exhaust administrative remedies, as well as issue preclusion and collateral estoppel. Plaintiff opposes the motion.

For the reasons set forth below, Defendants' motion to dismiss is granted.

### I.   Background

The following allegations are taken from Plaintiff's Amended Complaint and are assumed as true for the purposes of this motion to dismiss. Plaintiff is an employee of the State of New

1

Jersey Department of Health (the "NJDH").[1] Am. Compl. 1. Plaintiff was initially employed under the title Public Health Representative 1, Addictions, but for reasons unspecified in the Complaint, in 2009 his title was changed to Community Service Officer 2, Addictions.[2] Sometime 2009, perhaps on appeal of Plaintiff's reclassification, the CSC reviewed Plaintiff's duties and determined that he should be classified as a Community Service Officer 2, Addictions.[3] Am. Compl. 1-2. Plaintiff alleges that this classification is incorrect, because three of his female coworkers, Felicia Walton, Irene Enarusai, and Carla Carter, performed duties substantially equal to Plaintiff's duties, but were classified as Community Service Officers 1, Addictions, a title with a higher status and pay grade. *Id.*

Plaintiff appealed the CSC's 2009 determination, and on July 23, 2010, the CSC issued a final administrative decision concluding that Plaintiff was properly classified as a Community Service Officer 2, Addictions. *Id.* According to Plaintiff, because he was classified as a level two officer, instead of a level one officer, his salary was reduced and he no longer received yearly bonuses. Am. Compl. 2. Plaintiff asserts that his female coworkers, whose employment duties are substantially equal to his, continue to receive higher salaries and yearly bonuses. *Id.*

---

[1] The OTC appears to be a sub-office of the NJDH, although Plaintiff does not allege any connection between these two entities. Moreover, Plaintiff does not allege any direct relationship between himself and the OTC, although it appears that he is employed by the OTC at the NJDH.

[2] It is unclear from the pleadings, if the NJDH, OTC, CSC, or a third party, first assigned Plaintiff the title Community Service Officer 2, Addictions.

[3] Defendants characterize this determination as a decision made on an appeal for reclassification filed by Plaintiff. Defs. Br. in Supp. of Defs. Mot. To Dismiss Pl.'s Compl. ("Defs. Br.") 4. The pleadings do not specify whether the CSC's 2009 decision was the first determination by any agency to change Plaintiff's title, or whether it was made in response to an appeal by Plaintiff.

Effective September 1, 2010, Plaintiff claims that he was performing the same duties as the aforementioned female coworkers and assumed additional responsibility for a majority of the operations of the Tobacco Age of Sale program. *Id.* Plaintiff's position was reassessed, pursuant to a reorganization, and he was again classified as Community Service Officer 2, Addictions. *Id.* Plaintiff also appealed this classification to the CSC, and on August 20, 2012, the CSC affirmed his classification as a Community Service Officer 2, Addictions. Am. Compl. 1-2.

After Plaintiff's second request for a position reclassification was denied, Plaintiff filed the instant suit against the OTC, as well as the following former defendants: acting Chairperson of the CSC, Robert M. Czech, acting Director of the CSC Merit System Practices & Labor Relations Written Record Appeals Unit, Henry Maurer, and acting Assistant Director of the CSC Division of State and Local Government Operations, Joe Hill, Jr. ("Individual Defendants"). Compl. 1. The CSC itself was not listed as a defendant on the original Complaint. Plaintiff alleged that the CSC had "render[ed] decisions based on a position classification process that violates the Equal Pay Act." Compl. 1. He asserted that his duties as a program officer for the NJDH were substantially equal to certain female coworkers who had been given a higher level classification, salary, and yearly bonuses. Compl. 1-2. Plaintiff sought to have the CSC authorize the NJDH to compensate him for his loss of salary: approximately $2,758 lost per year, since the first disputed ruling by the CSC on December 20, 2009. Compl. 2. He also sought to have the CSC re-classify him as either Community Service Officer 1, Addictions or Program Development Specialist 1, Medical Assistance & Health Services, and to increase his future salary and bonuses to match the pay scale of his female coworkers with substantially equal duties. Compl. 2-3.

After some discovery, the OTC and Individual Defendants moved to dismiss Plaintiff's Complaint. In an opinion dated March 10, 2015, the Court denied the motion to dismiss, but

3

directed Plaintiff to amend his Complaint to clarify the capacity in which he intended to bring his

suit against Individual Defendants. Specifically, the Court directed Plaintiff to clearly allege

whether he intended to name Individual Defendants as defendants in their individual capacities, or

name the CSC as a defendant. On March 30, 2015, Plaintiff amended his Complaint to voluntarily

dismiss the Individual Defendants from the case and add the CSC as a defendant. The facts alleged

and cause of action in the Amended Complaint remained the same.

Now, defendants move to dismiss Plaintiff's Amended Complaint for failure to state a

claim, failure to exhaust administrative remedies, issue preclusion, and collateral estoppel. Plaintiff

opposes the motion.

## II.    Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations

as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v.

Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted).

The factual allegations set forth in a complaint "must be enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As the Third Circuit

summarized:

> 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true)
> to suggest' the required element. This 'does not impose a probability requirement
> at the pleading stage,' but instead 'simply calls for enough facts to raise a
> reasonable expectation that discovery will reveal evidence of' the necessary
> element.

*Phillips,* 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555); *see also Covington v. Int'l Ass'n of

*Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to

set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)). Moreover, where the plaintiff is proceeding *pro se*, the complaint should be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citation omitted).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*at 679. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal,* 556 U.S. at 684) (internal quotations omitted).

Additionally, in evaluating the sufficiency of the pleadings, a district court "may not consider matters extraneous to the pleadings . . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Pa. Allegheny Health Sys., Inc.,* 627 F.3d at 97 n. 6 (quoting *Burlington*, 114 F.3d at 1426) (internal quotations omitted).

**III.**   Analysis

  *a.  Exhaustion of Administrative Remedies*

Citing to irrelevant state law, Defendants argue that because Plaintiff has not exhausted his administrative remedies, by failing to appeal the CSC's final decision to the New Jersey Superior Court, Appellate Division, pursuant to New Jersey Court Rule 2:2-3(a)(2), Plaintiff is precluded from bringing a case under the EPA. *See* N.J. R.A.R 2:2-3(a)(2) ("appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer"). However, the Supreme Court has established that the EPA does not require a plaintiff to exhaust his administrative remedies before bringing a claim under the act. *Washington Cty. v. Gunther*, 452 U.S. 161, 175, n 14 (1981) (" . . . the Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts.); *Lentz v. Graco Inc.*, No. CIV.A. 05-3047AET, 2007 WL 2362607, at *3 (D.N.J. Aug. 14, 2007). Therefore, Plaintiff's failure to appeal the CSC's decision in state court does not prevent him from bringing his claims under the EPA in federal court.

  *b.  Issue Preclusion / Collateral Estoppel*

Defendants also argue that Plaintiff's EPA claims should be dismissed under the doctrines of issue preclusion and collateral estoppel, because Plaintiff already fully tried his EPA claims during his appeals to the CSC. "Issue preclusion, otherwise known as collateral estoppel, bars re-litigation of an issue identical to that in a prior action." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment." *Id*. However, Defendants cite to no federal cases in which a plaintiff was prevented by issue preclusion from challenging a state administrative agency's ruling on EPA claims. Instead, Defendants cite

6

to New Jersey state court decisions, in which plaintiffs were precluded by prior CSC decisions from bringing claims under the New Jersey Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1 to 34:19-14, and the New Jersey Law Against Discrimination, N.J.S.A. 10:15 § 10:15-12(d). *See Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 87 (2012); *Wolff v. Salem Cty. Corr. Facility,* 439 N.J. Super. 282, 285 (App. Div. 2015).

While, the Supreme Court has extended the doctrine of issue preclusion to the adjudications of both state and federal agencies, acting in a judicial capacity, *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("The principle [of issue preclusion] holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal."), the court has cautioned that the suitability of applying administrative issue preclusion "may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Astoria*, 501 U.S. at 110. The administrative agency must be "acting in a judicial capacity" and provide a plaintiff with a "full and fair opportunity" to litigate his claims, e.g. "[give a] plaintiff ample opportunity to present his views and to cross-examine the witnesses against him." *Edmundson*, 4 F.3d at 192. For example, the Third Circuit previously declined to apply issue preclusion to decisions by a Pennsylvania borough's Civil Service Commission, which had not been reviewed by a state court, because the Third Circuit determined that the complex questions of constitutional law at issue in the case were outside the competence of a commission composed of "lay citizens," with no expertise in the law or constitutional principles. *Id.* at 192-193.[4]

---

[4] The Court notes that the members of New Jersey's CSC also need not have any particular legal expertise. N.J. Stat. Ann. § 11A:2-3.

Here, Defendants have provided no basis for the Court to conclude that Plaintiff was provided a full and fair opportunity to litigate his claims.[5] Defendants have not, for example, demonstrated that Plaintiff was given a hearing or an opportunity to cross-examine witness. As such, I cannot find, at this time, that the doctrine of issue preclusion prevents Plaintiff from bringing his EPA claims.

### c. Plaintiff's Claims Against the OTC

Defendants argue that Plaintiff has not sufficiently plead facts to state a claim against the OTC, because no allegations in the Amended Complaint reference any wrongdoing by the OTC or request relief from the OTC. Indeed, other than listing the OTC as a defendant, the Amended Complaint only alleges discriminatory actions taken by the CSC and the NJDH. Importantly, in the Amended Complaint, Plaintiff neither names the NJDH as a defendant, alleges any relationship between the NJDH and the OTC, nor explains his own relationship to the OTC. Furthermore, Plaintiff only requests injunctive relief against the CSC, not the OTC or the NJDH. Under Fed. R. Civ. P. 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the

---

[5] The Court also notes that, in addition, before a court applies administrative issue preclusion, it must determine whether in this instance "a common-law rule of preclusion would be consistent with Congress' intent in enacting [the statute]" *Astoria*, 501 U.S. at 111 (quoting *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986)). Indeed, the Supreme Court has previously declined to apply administrative issue preclusion where a federal statute explicitly contemplates federal court review of agency administrative action. *Elliott*, 478 U.S. at 796 (declining to apply to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq., 2000e–5(b)); *Astoria*, 501 U.S. at 111-13 (declining to apply to the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 626(d)(2), 633(b)). The issue whether federal courts should apply the doctrine of issue preclusion to findings of a state administrative agency, which have not been affirmed by a reviewing state court, and which involve an EPA claim, is an unsettled area of law. Here, the parties have made no arguments as to whether it would be consistent with Congress' intent in enacting the EPA to apply issue preclusion in the instant case.

alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)-(3). Because Plaintiff has not made

any factual allegations under which a cause of action against the OTC would arise, the claim

against the OTC is dismissed without prejudice. *See W. Penn Allegheny Health Sys., Inc.*, 627 F.3d

at 98.

   d.   *Plaintiff's Claims Against the CSC*

Under the EPA, with some exceptions, an employee may bring an action against his

employer if he is being paid

> at a rate less than the rate at which [the employer] pays wages to employees of the
> opposite sex in such establishment for equal work on jobs the performance of which
> requires equal skill, effort, and responsibility, and which are performed under
> similar working conditions, except where such payment is made pursuant to (i) a
> seniority system; (ii) a merit system; (iii) a system which measures earnings by
> quantity or quality of production; or (iv) a differential based on any other factor
> other than sex.

29 U.S.C.A. §§ 206(d), 216(b). Defendants argue that the CSC is not Plaintiff's "employer" within

the meaning of the EPA, and therefore Plaintiff has failed to state a claim against the CSC. The

EPA defines an "employer" as "any person acting directly or indirectly in the interest of an

employer in relation to an employee and includes a public agency . . . ." 29 U.S.C.A. § 203(d).

Defendants contend that under this definition, the NJDH employs Plaintiff, while the CSC is

merely an impartial adjudicator and regulator, which reviews employment decisions made by other

New Jersey agencies, such as the NJDH, and establishes agency employment policy. The Court

agrees that under the facts alleged by Plaintiff, the CSC does not appear to be Plaintiff's employer.

The definition of employer under the EPA is exceedingly broad, and "[t]he Supreme Court

has even gone so far as to acknowledge that the [act's] definition of an employer is 'the broadest

definition that has ever been included in any one act.'" *In re Enterprise. Rent-A-Car Wage & Hour*

*Employment Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting *United States v.*

*Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945)). Under the EPA's definition of employer, an employee may have more than one employer--the term is not given a restrictive common law construction--rather courts are "admonished to examine the economic realities presented by the facts of each case." *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir. 1971) rev'd on other grounds 410 U.S. 512, 93 (1973) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). "[W]here two or more employers exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute joint employers under the [EPA]." *Enterprise*, 683 F.3d at 468 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)) (internal quotations omitted). "Ultimate control is not necessarily required to find an employer-employee relationship," instead, the alleged employer need only exercise "significant control." *Enterprise*, 683 F.3d at 468 (quoting *Browning-Ferris*, 691 F.2d at 1124) (internal quotations omitted). Moreover, even indirect control may be sufficient under the EPA, if it is significant. *Enterprise*, 683 F.3d at 468 (citing *Browning-Ferris*, 691 F.2d at 1124).

In *Enterprise*, the Third Circuit established a non-exhaustive list of factors to determine whether a party is an employer: whether the alleged employer has "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Enterprise*, 683 F.3d at 469. The *Enterprise* court emphasized that while these factors were useful in determining whether a party was an employer, such a determination "must be based on a consideration of the total employment situation and the economic realities of the work

relationship." *Id*. (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470-71 (9th Cir. 1983). Plaintiff has failed to allege facts under which the CSC satisfies any of the factors of the *Enterprise* test.

In his Amended Complaint, Plaintiff discusses his "duties as a program officer for the New Jersey Department of Health," but does not discuss any duties he owes to the CSC. Am. Compl. 1. Moreover, in his response brief, Plaintiff concedes "I am [an] employee of the State of New Jersey, Department of Health, and Office of Tobacco Control." Pl.'s Resp. Br. 3. Although Plaintiff also claims in his brief that "[t]he CSC is the authorized entity that determines employee title status," *id.*, nowhere in the Amended Complaint does he allege that the CSC is his employer, or that it carried out any employer-related functions. Instead, under the facts alleged by Plaintiff, the CSC appears to provide an administrative appeals process for the determination of Plaintiff's job title, while the NJDH is the agency at which Plaintiff is employed. Indeed, the CSC was created, under N.J.S.A. §§ 11A:2-1, 2-7, for managing the employment policy of New Jersey's state agencies, including rendering final administrative decisions on employment disputes between the agencies and their employees. N.J.S.A. § 11A:2-6. Such appeal subject matter includes, but is not limited to, employee removal, suspension, fines, disciplinary demotion, and termination. *Id.* The CSC is also responsible for establishing the job title classification plan, under which Plaintiff's title was determined. *See* N.J.S.A. § 11A:3-1(a). Moreover, the New Jersey's Appellate Division has previously affirmed, that although the New Jersey Office of Employee Relations Department of Personnel, the CSC's predecessor entity, "has vast statutory authority to regulate terms and conditions of employment . . . that authority does not make it an employer," as defined by the New Jersey Employer-Employee Relations Act. *State of New Jersey, Office of Employee Relations, Department of Personnel, and Communications Workers of America, AFL-CIO*, P.E.R.C. No. 89-

67, Docket No. CO-H-88-106, a-12 (December 19, 1988), *aff'd per curiam*, Docket No. A -3465-88T5 (App. Div. 1990).

Although Plaintiff argues in his brief that it is the CSC that decides his title and salary, and not the NJDH or OTC, it is unclear from the pleadings whether 1) the CSC was the agency that initially determined Plaintiff's title or 2) the NJDH first set Plaintiff's title, and the CSC only became involved upon Plaintiff's appeal. In short, the Court cannot determine from the pleadings whether the CSC has (1) authority to hire and fire Plaintiff; (2) authority to promulgate Plaintiff's work rules and assignments; (3) day-to-day supervision of Plaintiff, including the authority to discipline Plaintiff; and (4) control of employee records, including payroll, insurance, taxes, and the like. Furthermore, although the CSC appears to have the authority to establish administrative policy, as well as resolve disputes, regarding the conditions of Plaintiff's employment, including compensation, benefits, and hours, it is unclear whether, outside of these arguably neutral administrative and adjudicatory functions, the CSC has any power to directly determine the conditions of Plaintiff's employment. Taking as a whole the total employment situation and economic realities alleged by Plaintiff in the Amended Complaint, without further allegations of the CSC's control over Plaintiff, the CSC does not appear to be an employer within the meaning of the EPA. Therefore, Plaintiff's claim against the CSC is dismissed without prejudice.

## IV.    Conclusion

Defendants' motion to dismiss is granted and Plaintiff's claims are dismissed. This case shall be marked administratively terminated, but Plaintiff shall have the option to, within thirty (30) days of the date of this Opinion, amend his Amended Complaint to cure its pleading deficiencies and reopen the case. If Plaintiff chooses to amend his complaint against the CSC

and/or the OTC, the statute of limitations on his claims against these parties shall be tolled pending

his amendment.


Date: December 7, 2015


/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge