*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARREN CLARK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. Action No.: 12-7763 (FLW)(TJB) |
| | : |
| STATE OF NEW JERSEY | : OPINION |
| DEPARTMENT OF HEALTH, and | : |
| OFFICE OF TOBACCO CONTROL, | : |
| NUTRITION, AND FITNESS, | : |
| | : |
| Defendants. | : |

**WOLFSON**, **United States District Judge**

*Pro se* plaintiff Darren Clark ("Plaintiff") brings this employment sex discrimination suit against Defendants New Jersey Department of Health (the "DOH"), and Office of Tobacco Control, Nutrition, and Fitness (the "OTC") (collectively "Defendants"),[1] alleging a violation of the Equal Pay Act of 1963 (the "EPA"), 29 U.S.C. § 206, *et seq*., and the Fair Labor Standards Act (the "FLSA"), 29 U.S.C.S. § 201, *et seq*. Defendants move to dismiss Plaintiff's Second Amended

---

[1] The punctuation of the Second Amended Complaint is somewhat ambiguous. Plaintiff lists the named defendants in the following way:

  The State of New Jersey
  Department of Health,
  Office of Tobacco Control, Nutrition, and Fitness
  (formerly Office of Tobacco Control)

Second Am. Compl. ("SAC") 1. It is unclear whether Plaintiff intended to name the State of New Jersey as a separate defendant. However, because Plaintiff references both the DOH and the OTC, but not the State of New Jersey, in the body of the Second Amended Complaint, the Court presumes that the DOH and the OTC are the only two intended defendants.

1

Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim and Eleventh Amendment sovereign immunity. Defendants also appear to move for summary judgment, pursuant to Fed. R. Civ. P. 56, for the same reasons. Plaintiff opposes both motions.

For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's FLSA claim and **DENIED** as to Plaintiff's EPA claim. Additionally, insofar as Defendants are moving for summary judgment, this motion is **DENIED** without prejudice.

**I.   Procedural and Factual Background**

The following allegations are taken from Plaintiff's Second Amended Complaint and are assumed as true for the purposes of this motion to dismiss. Plaintiff is currently employed by the New Jersey Department of Health (the "DOH") in the Office of Tobacco Control, Nutrition and Fitness (formerly the Office of Tobacco Control) (the "OTC"). SAC at 1. Plaintiff was first hired by the DOH in May 2000 as a Public Health Representative Trainee. SAC at 2. Over the next few years, Plaintiff was promoted multiple times, until in 2003, he was given the title of Public Health Officer 1 (range 24).[2] SAC at 2.

In 2008, the DOH's Comprehensive Tobacco Control Program was reorganized and Plaintiff was assigned new duties. SAC at 2. As part of this reorganization, Plaintiff and his coworkers were informed by the Assistant Commissioner for the DOH that "if [they] felt [their] current titles were not appropriate for [their] new duties a position classification application had to be submitted to the State of New Jersey Civil Service Commission." SAC at 2. Consequently, Plaintiff submitted a position classification application to the CSC in 2008. SAC at 2. At the same time, Plaintiff's female coworker, Felicia Walton, whose then title was Community Service Officer

---

[2] In the DOH, an employee's range represents their pay grade – the higher the range number, the higher the employee's salary. SAC at 2.

2

3 (range 18), also applied for a position classification from the CSC. SAC at 2. In 2009, the CSC determined that Plaintiff's duties corresponded to the title of Community Service Officer 2, Addictions ("CSO2") (range 21), and Ms. Walton's duties corresponded to the title of Community Service Officer 1, Addictions ("CSO1") (range 26). SAC at 2. Plaintiff appealed his 2009 classification as CSO2 to the CSC, but the CSC determined that the classification was correct. SAC at 3.

The assignment of these new titles to Plaintiff and Ms. Walton meant that Ms. Walton had a higher status than Plaintiff, was paid a higher salary by the DOH, and was eligible for bonus payments from the DOH, which Plaintiff could not receive as a CSO2. SAC at 2. However, Plaintiff claims that contrary to the CSC's assessments, at all times, he and Ms. Walton had "substantially similar job duties." SAC at 2. Additionally, Plaintiff asserts that his other female coworkers, Irene Enarusai and Carla Carter, who were given the title CSO1 by the DOH prior to 2009, also had "substantially similar job duties" to his duties and Ms. Walton's duties. SAC at 2. Ms. Enarusai and Ms. Carter, by virtue of their superior titles, also enjoyed higher status, salary, and bonuses than Plaintiff. SAC at 2.

In August/September 2010, the OTC was reorganized for a second time. SAC at 3. As part of this second reorganization, Plaintiff was assigned additional responsibilities. SAC at 3. According to Plaintiff, the reorganization resulted in Plaintiff having "responsibilities equal to or exceeding those of [Ms. Walton, Ms. Enarusai, and Ms. Carter]." SAC at 3. Based on his new duties and responsibilities, Plaintiff submitted a new position classification application to the CSC. SAC at 3. However, the CSC again determined that Plaintiff should be classified as CSO2. SAC at 3. For a second time, Plaintiff appealed this classification to the CSC, and the CSC confirmed that CSO2 remained Plaintiff's proper job title. SAC at 3.

Because the CSC assigned Plaintiff the rank of CSO2, despite the fact that Ms. Walton, Ms. Enarusai, and Ms. Carter, who performed the same or lesser duties, held the title of CSO1, Plaintiff alleges that the CSC's process for determining the appropriate classification must be based on something other than his actual job duties. SAC at 2-3. Plaintiff asserts that such differential treatment constitutes discrimination against him on the basis of his sex. SAC at 3-4. Consequently, Plaintiff brings claims under the EPA and the FLSA against the DOH for discriminating between himself and his female coworkers on the basis of sex by "demoting and compensating [him] at a salary rate and increment step rate lower than the three female coworkers Felicia Walton, Irene Enarusai and Carla Carter for substantially equal duties." SAC at 3-4.

As remedies, Plaintiff seeks payment from the DOH for the difference in his salary (approximately $2,300 per year) and the yearly bonuses received by his female coworkers (approximately $2,758 per year) since the date of his allegedly inappropriate classification as CSO2 in 2009. SAC at 4. Additionally, Plaintiff requests that the Court enjoin the DOH to classify him as either CSO1 or Program Specialist 1, Medical Assistance & Health Services, and to compensate him at the same rate as his CSO1 female coworkers. SAC at 4.[3]

On December 20, 2012, Plaintiff filed the initial Complaint in this action. In that Complaint, Plaintiff alleged generally the same facts as those detailed *supra*, and brought the same EPA claim against the OTC, as well as the following former defendants: acting Chairperson of the CSC, Robert M. Czech, acting Director of the CSC Merit System Practices & Labor Relations

---

[3] The Court notes that Plaintiff does not assert any claims against, or seek remedies from, the OTC individually in the "Causes of Action and Demand" section of the Second Amended Complaint. SAC at 4. However, in the "Background and Parties" section of the Amended Complaint, Plaintiff clarifies that "the relief sought in this Amended Complaint is sought from all of these Defendants." SAC at 1.

Written Record Appeals Unit, Henry Maurer, and acting Assistant Director of the CSC Division of State and Local Government Operations, Joe Hill, Jr. ("Individual Defendants"). Compl. 1. The DOH was not listed as a defendant in the original Complaint. In that Complaint, Plaintiff alleged that the CSC had "render[ed] decisions based on a position classification process that violates the Equal Pay Act." Compl. 1.

After full discovery, the OTC and Individual Defendants moved to dismiss Plaintiff's Complaint, asserting (1) that they were immune from suit under the Eleventh Amendment of the U.S. Constitution, (2) the Individual Defendants were entitled to qualified immunity, and (3) Plaintiff had failed to state a claim under the EPA. In an Opinion dated March 10, 2015, the Court denied the motion to dismiss, but directed Plaintiff to amend his Complaint to clarify the capacity in which he intended to bring his suit against Individual Defendants. Specifically, the Court directed Plaintiff to clearly allege whether he intended to name Individual Defendants as defendants in their individual capacities, or name the CSC as a defendant.

On March 30, 2015, Plaintiff amended his Complaint to voluntarily dismiss the Individual Defendants from the case and add the CSC as a defendant. The DOH was not listed as a defendant in the Amended Complaint. The general facts alleged and the cause of action asserted in the Amended Complaint were substantially the same as those asserted in the original Complaint. On May 26, 2015, the OTC and the CSC moved to dismiss the Amended Complaint for failure to state a claim, failure to exhaust administrative remedies, issue preclusion, and collateral estoppel. In an Opinion dated December 7, 2015, the Court found that failure to exhaust administrative remedies, issue preclusion, and collateral estoppel did not preclude Plaintiff from bringing his EPA claim. Nonetheless, the Court granted the motion and dismissed the Amended Complaint without prejudice, because under the facts alleged, the DOH, and not the OTC or the CSC appeared to be

5

Plaintiff's "employer," under the EPA's definition of the term. The Court gave Plaintiff leave to amend his Complaint, again, to allege more facts to identify his employer and to join his employer as a defendant.

On January 4, 2016, Plaintiff filed the Second Amended Complaint, which alleges more specific facts regarding his employee-employer relationship with the DOH and the OTC; he also dropped the CSC as a defendant and named the DOH as a defendant. The Second Amended Complaint also newly asserts claims under the FLSA, in addition to Plaintiff's original sex discrimination claims under the EPA. Presently, Defendants move to dismiss Plaintiff's claims, pursuant to Rule 12(b)(6) and Rule 56, for failure to state a claim and Eleventh Amendment sovereign immunity. Plaintiff opposes this motion.

## II. Motion to Dismiss Standard of Review

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted). Moreover, where the plaintiff is proceeding *pro se*, the complaint should be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93-94.

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

**III.    Analysis**

    **A.  FLSA Claim**

Defendants contend that the Eleventh Amendment bars Plaintiff's newly asserted FLSA claim against both Defendants. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The amendment affords states immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007). This immunity from suit also extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). The state is a party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d. Cir. 1989). In short, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Lakewood*, No. 03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug.4, 2005) (citing *Chisolm*, 275 F.3d at 323).

Regarding the instant case, the Third Circuit has long held that the DOH is an arm of the State of New Jersey for sovereign immunity purposes. *See, e.g. Aerated Products Co. v. Dep't of Health*, 159 F.2d 851, 853 (3d Cir. 1947); *Rouse v. N.J. HHS*, Civ. No. 15-01511 (JLL), 2015 U.S. Dist. LEXIS 139440, at *6 (D.N.J. Oct. 13, 2015); *Mercer Cty. Children's Med. Daycare, LLC v.*

8

*O'Dowd*, Civ. No. 13-1436, 2014 U.S. Dist. LEXIS 16038, at *9 (D.N.J. Feb. 7, 2014); *Rahman v. Taylor*, Civ. No. 10-0367 (JBS), 2010 U.S. Dist. LEXIS 53661, at *16 (D.N.J. May 27, 2010). Moreover, as a subdivision of the DOH, the OTC is likewise an arm of the state for sovereign immunity purposes. Consequently, both Defendants are immune from suit under the Eleventh Amendment.

There are three narrowly circumscribed exceptions that have been established to limit the breadth of the Eleventh Amendment: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). However, none of these exceptions apply to Plaintiff's FLSA claim against Defendants. Regarding the first exception, the Supreme Court has definitively found that Congress does not have the power to abrogate states' Eleventh Amendment immunity as to claims by private parties under the FLSA. *Alden v. Maine,* 527 U.S. 706, 712 (1999) (state employees do not have a private remedy in either state or federal court against their state employers for violations of the FLSA). As to the second exception, New Jersey has not waived its sovereign immunity with respect to FLSA claims. *See Doe v. N.J. Dep't of Corr.*, Civ. No., 2015 U.S. Dist. LEXIS 69569, at *22 (D.N.J. May 29, 2015) ("In several non-precedential decisions, the Third Circuit has relied on *Ritchie v. Cahall*, 386 F.Supp. 1207, 1209-10 (D.N.J.1974), and upheld dismissals of tort claims against the State brought in federal court because the [New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq*.,] did not waive sovereign immunity as to federal court proceedings.") (citing *Hyatt v. County of Passaic*, 340 F. App'x. 833, 837 (3d Cir. 2009) and *Mierzwa v. United States*, 282 F. App'x. 973, 976 (3d Cir. 2008)). And finally, with regard to the third exception, Plaintiff does not bring any claims against individual state officers. For these reasons, the Court finds that Plaintiff's FLSA claim is barred

by Eleventh Amendment sovereign immunity and consequently, this Court lacks subject matter jurisdiction over this claim. Accordingly, Plaintiff's FLSA claim is dismissed with prejudice.

### B. EPA Claim[4]

Under the EPA, with some exceptions, an employee may bring an action against his employer if his employer

> discriminate[s] . . . between [the employee and other] employees on the basis of sex by paying wages to [the employee] in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C.A. §§ 206(d), 216(b). Claims based upon the EPA follow a two-step burden-shifting paradigm, wherein the plaintiff must first allege and "establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (citing *E.E.O.C. v. Delaware Dep't. of Health and Social Services*, 865 F.2d 1408, 1413–14 (3d Cir. 1989). Thereafter, the employer has the burden of demonstrating the applicability of one of the four affirmative defenses identified in the EPA: (i)

---

[4] This Court previously ruled in the March 10, 2015 Opinion that Eleventh Amendment sovereign immunity does not bar Plaintiff's claim under the EPA, because pursuant to § 5 of the Fourteenth Amendment, Congress has abrogated states' immunity from EPA claims. *Clark v. Czech*, Civ. No. 12-7763 (FLW)(TJB), 2015 U.S. Dist. LEXIS 29496, at *8 (D.N.J. Mar. 10, 2015) (citing *Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 126 (3d Cir. 1988)); *see also* 29 U.S.C. § 203(e) (stating that employees of a state, political subdivision of a state, or state agency are covered by the Act); § 216(b) (stating that employers are liable to the employee affected by violations of the Act); *Visnikar v. Dep't of Envtl. Prot.*, Civ. No. 02-963, 2004 U.S. Dist. LEXIS 3645, at *45 (W.D. Pa. Jan. 27, 2004) ("The Third Circuit has made clear that states are not immune from claims brought under the disparate wage provisions of the EPA.").

a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex. *See* 29 U.S.C. § 206(d)(1); *see also Stanziale*, 200 F.3d at 107.

Defendants do not dispute that they are Plaintiff's "employers," within the meaning of the EPA.[5] Rather, Defendants argue that under the facts alleged, they have not violated the EPA, because "[t]he decisions of the CSC cannot be attributed to the DOH and OTC." Br. in Supp. of

---

[5] The EPA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ." 29 U.S.C.A. § 203(d). The definition of employer under the EPA is exceedingly broad, and "[t]he Supreme Court has even gone so far as to acknowledge that the [act's] definition of an employer is 'the broadest definition that has ever been included in any one act.'" *In re Enterprise. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945)). Under the EPA's definition of employer, an employee may have more than one employer--the term is not given a restrictive common law construction--rather courts are "admonished to examine the economic realities presented by the facts of each case." *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 612 (3d Cir. 1971) rev'd on other grounds 410 U.S. 512, 93 (1973) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). "[W]here two or more employers exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute joint employers under the [EPA]." *Enterprise*, 683 F.3d at 468 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)) (internal quotations omitted). "Ultimate control is not necessarily required to find an employer-employee relationship," instead, the alleged employer need only exercise "significant control." *Enterprise*, 683 F.3d at 468 (quoting *Browning-Ferris*, 691 F.2d at 1124) (internal quotations omitted). Moreover, even indirect control may be sufficient under the EPA, if it is significant. *Enterprise*, 683 F.3d at 468 (citing *Browning-Ferris*, 691 F.2d at 1124). In *Enterprise*, the Third Circuit established a non-exhaustive list of factors to determine whether a party is an employer: whether the alleged employer has "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Enterprise*, 683 F.3d at 469. The *Enterprise* court emphasized that while these factors were useful in determining whether a party was an employer, such a determination "must be based on a consideration of the total employment situation and the economic realities of the work relationship." *Id*. (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470-71 (9th Cir. 1983). Under the facts alleged, both the DOH and the OTC appear to be Plaintiff's employers within the meaning of the EPA.

11

Defs.' Mot. to Dismiss Pl.'s SAC Pursuant to Fed. R. 12(b)(6) and Fed. R. 56 ("Defs.' Supp. Br.") 17. Put differently, Defendants argue that because Plaintiff alleges that the CSC made the ultimate decision to assign Plaintiff the title of CSO2, and Defendants merely adhered to this decision, Plaintiff cannot assert that Defendants "discrimate[d] . . . between employees on the basis of sex." *See* 29 U.S.C.A. § 206(d). Indeed, Defendants claim that the DOH and the OTC cannot be held responsible, because the DOH and the OTC were bound by statute to obey the CSC's classification decisions.[6]

In essence, Defendants attempt to trap Plaintiff in a catch-22. According to Defendants, on the one hand, Plaintiff is unable to bring a claim against the DOH or the OTC because they are not the agency responsible for classifying him in a position with a lower pay grade, while on the other hand, Plaintiff is unable to bring a claim against the CSC, the purportedly responsible agency, because the CSC is not his employer. However, if the Court were to accept Defendants' position, it would be patently unfair to litigants, such as Plaintiff, challenging state agencies' employee classification decisions. To the contrary, to bring a claim under the EPA, a plaintiff need not allege discriminatory intent on the part of the employer. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 640 (2007) (The EPA does not require a plaintiff to establish that his employer engaged in "intentional discrimination.") (superseded by statute on other grounds); *Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div.*, 759 F. Supp. 1089, 1096 (D.N.J. 1991) ("[T]he Equal Pay Act . . . creates a type of strict liability in that no intent to discriminate needs to be demonstrated."). Instead, a plaintiff need only plead that "employees of the opposite sex were paid differently for performing

---

[6] Pursuant to New Jersey statute, the CSC is a separate entity within the State of New Jersey, whose duties are "to ensure efficient public service for state, county, and municipal government," including "broad reclassification powers." *See In re Johnson*, 215 N.J. 366, 376 (N.J. 2013).

'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale*, 200 F.3d at 107. Thus, the employer need not have made the classification itself, but rather, it would be liable under the EPA, barring some affirmative defense, simply for paying employees of opposite sexes differently for performing equal work.

Here, Plaintiff has successfully alleged the elements of a prima facie case against Defendants under the EPA – Plaintiff has alleged that Defendants paid him differently from his female coworkers for performing equal work. Although the fact that the CSC determined Plaintiff's classification may have bearing on Defendants' affirmative defenses to Plaintiff's EPA claim, it is certainly no obstacle to Plaintiff's prima facie case. Ultimately, Defendants are the entities that employ Plaintiff and allegedly pay him a lower salary than his female coworkers. Therefore, Plaintiff has successfully plead a prima facie case against the DOH and the OTC under the EPA.

Furthermore, the assertion that Defendants cannot be held responsible for their actions when they are bound by state law to violate the EPA is no defense to Plaintiff's claims. *See Brennan v. Bd. of Educ.*, 374 F. Supp. 817, 831 (D.N.J. 1974) ("The Board's claim is that it had to follow the Civil Service Classification System, and that it was thus bound by state law to violate the Equal Pay Act . . . would be no defense to the violations here."). Indeed, in promulgating regulations pursuant to the EPA, the Equal Employment Opportunity Commission has expressly stated that "compliance with other applicable legislation, [including state law,] will not excuse violations of the EPA." 29 C.F.R. § 1620.28. This is because in circumstances where "compliance with both federal and state regulations is a physical impossibility," the state law must give way to the federal law. *See Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012). Accordingly,

Defendants cannot argue that they are not liable for paying their male and female employees different salaries for performing equal work, simply because the CSC directed them to do so.

Next, Defendants also re-assert an argument raised in their first motion to dismiss — namely that they have not violated the EPA, because Plaintiff's salary was determined based on a bona fide merit system, and not based on his sex. However, as I already explained in my March 10, 2015 Opinion, whether Plaintiff's classification and salary were determined based on a bona fide merit system is a question of fact that may not be resolved on a motion to dismiss. *Clark*, 2015 U.S. Dist. LEXIS 29496, at *11-12. Once a plaintiff has stated a prima facie case by alleging that his coworkers of the opposite sex were paid differently for performing "equal work," the burden shifts to the plaintiff's employer to demonstrate one of the four affirmative defenses identified in the EPA: (i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex. *Stanziale*, 200 F.3d at 107. In order to prevail on an affirmative defense, an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Id.* at 107–08.

In support of their motion to dismiss, Defendants submit records from Plaintiff's appeals of his job classification by the CSC, including (1) letters to Plaintiff from the DOH notifying Plaintiff of the CSC's decision to classify him as a CSO 2 and their reasoning; (2) documents that Plaintiff submitted to the CSC in the course of appealing his classification; and (3) administrative opinions issued by the CSC regarding Plaintiff's classification.[7] Defs.' Supp. Br. Exs. F, G, H, L,

---

[7] These documents may be considered on the instant motion to dismiss because they are integral to the Second Amended Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

M, and N. According to Defendants, these records demonstrate that the CSC's classification of Plaintiff as a CSO2 was made pursuant to a bona fide merit system and, moreover, was not made on the basis of Plaintiff's sex. Indeed, in both the DOH's letters to Plaintiff and the CSC's administrative opinions, the stated justification for classifying Plaintiff as a CSO2 was that his "position [did] not rise to the level of a Community Service Officer, 1 Addictions since [his] position [did] not organize, coordinate, supervise and evaluate all phase's [sic] of community treatment, rehabilitation, and prevention education programs for addictions." Defs.' Supp. Br. Ex. F at 3; *see also* Defs.' Supp. Br. Ex. H at 2, Ex. L at 4, and Ex. N at 4. Additionally, these documents indicate that the CSC found Plaintiff's job duties and responsibilities to be "significantly descriptive" of the duties assigned to the specification for CSO2. Defs.' Supp. Br. Ex. F at 3, Ex. H at 2, Ex. L at 4, and Ex. N at 4.

However, Plaintiff alleges in his Second Amended Complaint that the CSC's classification review process was "flawed," because despite the CSC's claims that classifications are assigned based on an employee's duties, Plaintiff alleges that he was given a different classification from that of his female coworkers with "substantially equal" duties. SAC at 2-3. Accepting as true Plaintiff's allegation that he and his female coworkers had equal duties, it is impossible for Defendants to assert that Plaintiff and his coworkers were classified solely based on their job duties. If this were the case, they should have all been assigned the same title. This leaves open the plausible inference that Plaintiff was classified based on a different metric – his sex. As I

---

1426 (3d Cir. 1997) (A "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (quotations omitted)). In that regard, the Second Amended Complaint includes allegations regarding the process by which the CSC classified Plaintiff and Plaintiff's subsequent appeals of these decisions to the CSC. SAC at 1-3. Accordingly, the documentary records of Plaintiff's appeals process is can be considered as they are integral to the pleadings.

15

explained in my March 10, 2015 Opinion, "whether the classification process is a merit-based system that qualifies as an affirmative defense under the Act depends on how it was implemented, and accordingly is a question of fact." *Clark*, 2015 U.S. Dist. LEXIS 29496, at *11. Thus, although the process by which the CSC evaluates employee classifications ostensibly appears to be a merit-based system, not based on sex, under the facts alleged, this system was not implemented in a sex-blind manner. Accordingly, this issue is, quite simply, premature at this stage of the proceedings, as it demands the Court to make factual determinations that are not only ill-suited at this stage, but prohibited. Rather, an analysis of whether the CSC's classification process operates as a merit system under the Equal Pay Act, and whether it was implemented as such in this case, is better suited to a motion for summary judgment.[8]

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's EPA claim is denied.[9]

## IV. Motion for Summary Judgment

Finally, Defendants "move to dismiss" the Second Amended Complaint, pursuant to Rule 56, the federal rule governing motions for summary judgment. *See* Fed. R. Civ. P. 56. Under L.

---

[8] The Court notes that such analysis would require the Court to review evidence as to whether Plaintiff and his female coworkers are indeed performing "equal work" and the manner by which his female coworkers were classified, in addition to the CSC's process in classifying Plaintiff himself.

[9] Defendants also re-assert their argument that the CSC's classification of Plaintiff as a CSO1 is a "final administrative decision that can only be appealed to New Jersey's Appellate Division pursuant to New Jersey Court Rules 2:2-3(2)." Defs.' Supp. Br. at 25. However, as I explained in my December 7, 2015 Opinion, "the EPA does not require a plaintiff to exhaust his administrative remedies before bringing a claim under the act . . . [and,] [t]herefore, Plaintiff's failure to appeal the CSC's decision in state court does not prevent him from bringing his claims under the EPA in federal court." *Clark v. State Dep't of Health Office of Tobacco Control*, Civ. No. 12-7763 (FLW)(TJB), 2015 U.S. Dist. LEXIS 163498, at *9 (D.N.J. Dec. 7, 2015) (citations omitted).

Civ. R. 56.1(a), a party moving for summary judgment must "furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion" ("Rule 56.1 Statement"). L. Civ. R. 56.1(a). Pursuant to this local rule, "[a] motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed." L. Civ. R. 56.1(a); *see also Buck Foston's New Brunswick, LLC v. Cahill*, Civ. No. 11-03731(FLW)(TJB), 2013 U.S. Dist. LEXIS 138815, at *21 (D.N.J. Sep. 27, 2013). Here, Defendants have failed to submit a Rule 56.1 Statement with their motion. Accordingly, insofar as Defendants' motion can be construed as a motion for summary judgment, the Court denies the motion without prejudice for failure to adhere to Local Rule 56.1(a).

## V. Conclusion

In conclusion, Plaintiff's FLSA claim is **DISMISSED** with prejudice and Defendants' motion to dismiss is **DENIED** as to Plaintiff's EPA claim. Additionally, insofar as Defendants are moving for summary judgment, this motion is **DENIED** without prejudice.

Date: August 12, 2016

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge