**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
DAREN CLARK,                 :
                          :
     Plaintiff,           :        Civil Action No.:12-7763(FLW)
                          :
        v.                 :
                          :         **OPINION**
STATE OF NEW JERSEY,    :
Department of Health,      :
Office of Tobacco Control,   :
Nutrition and Fitness (formerly  :
Office of Tobacco Control),   :
                          :
     Defendants.       :
                          :
—————————————————————  :

**<u>WOLFSON, United States District Judge:</u>**

Presently before the Court is a Motion for Summary Judgment filed by Defendants State of New Jersey, New Jersey Department of Health (the "DOH"), and Office of Tobacco Control, Nutrition and Fitness (the "OTC") (collectively, the "Defendants"). The instant action arises out of *Pro Se* Plaintiff Darren Clark's ("Plaintiff" or "Clark") allegations that Defendants violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), by requiring him to perform the same duties as his female co-workers, but with a lower compensation and a lesser job title. On this motion, Defendants argue that summary judgment is proper because: (1) Plaintiff's claim is time-barred, and (2) Plaintiff has failed to make a *prima facie* case under the Equal Pay Act, and even if Plaintiff has made such a showing, Defendants have a proffered an affirmative defense that clearly explains Plaintiff's wage disparity. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

1

## BACKGROUND

### I.   Factual Background[1]

Clark is a New Jersey State employee, who, in May 2000, began his employment with the Department of Health and Senior Services ("DHSS") under the title, Public Health Representative in Training within the Division of Addiction Services.   Statement of Uncontested Material Facts on Def.'s Mot. for Summary Judgment, at ¶ 12.   Over the next nine years, Clark received three promotions.   *Id.* at ¶ 13.   Clark was promoted from Public Health Representative in Training to a Public Health Representative 3 in 2000, to a Public Health Representative 2 in 2001, to a Public Health Representative 1 in 2003 or 2004.   *Id.* at ¶ 13.

Thereafter, on January 12, 2009, DHSS was reorganized and Clark's role changed to that of a grant monitor in the Comprehensive Tobacco Control Program ("CTCP"), but his title remained the same; he remained a Public Health Representative 1.   *Id.* at ¶¶ 13, 18-19.   However, his new duties included monitoring grantees to ensure their compliance

---

[1]      The Court treats Defendants' version of facts as undisputed, on this motion for summary judgment, because Plaintiff failed to properly dispute Defendants' Statement of Uncontested Material Facts.   *See Hernandez v. United States*, 608 F. App'x 105, 109–10 (3d Cir. 2015) (explaining that the District court did not err in treating the moving party's version of the facts as undisputed when deciding its motion for summary judgment because the nonmoving party failed to properly place those facts in dispute, pursuant to local Rule 56.1, by filing a statement of disputed facts or submitting evidence with his response to the summary judgment motion); *Stringer v. The Pittsburgh Police*, 408 F. App'x 578, 580–81 (3d Cir. 2011) ("[T]he District Court deemed defendants' statement of facts undisputed because [Plaintiff], in his own statement, did not admit or deny defendants' averments on a paragraph-by-paragraph basis or cite evidence of record in support of his own averments as he was required to do . . . . We find no reversible error in this regard.").   Instead, Plaintiff, here, submitted a letter in opposition with no evidence to support his conclusory assertions and opinions that Defendants' alleged conduct was discriminatory.   Accordingly, the following recitation of the facts is taken from Defendants' Statement of Uncontested Material Facts on Defendants' Motion for Summary Judgment.

with grant requirements.  *Id.* at ¶ 20.  The reorganization resulted in Clark being placed in the Community Partnership sub-group in CTCP, where he worked with Irene Enarusai ("Enarusai") and Carla Carter ("Carter"), both of whom were hired under the title of Community Service Officer 1 ("CSO 1") and continued to work under the CSO 1 title after the reorganization.  *Id.* at ¶¶ 22-23.  Clark, Enarusai, and Carter were supervised by LorieAnn Wilkerson-LeConte ("Wilkerson-LeConte").  *Id.* at ¶ 21.

Another co-worker, Felicia Walton ("Walton"), worked in CPTC in a different sub-group as a Program Officer for the Reaching Everyone by Exposing Lies ("REBEL") program.  *Id.* at ¶¶ 25-26.  Walton was supervised by Janis Mayer-Obermeier ("Mayer-Obermeier").  Walton was hired, in 2006 or 2007, as a Community Service Officer 3 ("CSO 3").  *Id.* at ¶ 29.  In 2009, Walton filed for a "desk audit" to have her title reclassified.  *Id.* at ¶ 30.  After which, Walton was reclassified as a CSO 1, the same title that Enarusai and Carter held.

On February 27, 2009, Clark requested a desk audit, through a Position Classification Questionnaire ("PCQ"), as required by Title 4A of the New Jersey Administrative Code, seeking to be reclassified from a Public Health Representative 1 to a CSO 1 (the "First PCQ").  *Id.* at ¶ 35.  The cover letter accompanying Clark's First PCQ indicated that Wilkerson-LeConte did not support his request to be reclassified as a CSO 1; rather, she found his Public Health Representative 1 title appropriate.  *Id.* at ¶¶ 36-41.

On May 27, 2009, a representative from the New Jersey Civil Service Commission ("CSC") interviewed Clark and Wilkerson-LeConte regarding Clark's First PCQ.  During the interview, Clark was advised that his review would be based on his specific duties, not a comparison to his co-workers.  *Id.* at ¶ 44.  Clark, then, described his duties and provided

examples. *Id.* at ¶ 45. Following the interview, Clark was informed that, based on his duties, he could be demoted to a title that more properly aligned with his duties. *Id.* at ¶ 46. When asked if he wanted to continue, Clark indicated that he did. *Id.* at ¶ 47.

On June 3, 2009, at the CSC's request, Wilkerson-LeConte wrote a memorandum, wherein she provided more details on Clark's duties and his time spent on those duties, and she ultimately expressed her disagreements with Clark's PCQ. *Id.* at ¶¶ 48-51. For the most part, Clark agreed with Wilkerson-LeConte's assessment of his duties and how much time he spent on those duties. *Id.* at ¶¶ 51-52, 64-66. However, Clark disagreed with the amount of time he spent offering "technical assistance," *id.* at ¶ 53, ¶ 56-57, and reviewing the reports related to the REBEL program—a program that Wilkerson-LeConte did not supervise, *id.* at ¶ 56-58, but was instead overseen by Mayer-Obermeier, *id.* at ¶¶ 69, 71. According to Clark, Mayer-Obermeier served as his "secondary supervisor." *Id.* at ¶ 72. Notably, Clark omitted from his PCQ his work regarding the REBEL program and that Mayer-Obermeier was his secondary supervisor, which Clark admits, "probably should have" been included. *Id.* at ¶¶ 59, 72-73.

Wilkerson-LeConte explained that her assessment was founded on Clark's actual duties that he was expected to perform, based on his performance evaluation from the previous year, which Clark signed on April 24, 2009. *Id.* at ¶¶ 74-75. By signing his performance evaluation, Clark acknowledged and agreed with his duties included in the evaluation. *Id.* at ¶¶ 76-77. However, during the desk audit, Clark claimed that the performance evaluation was inaccurate because the scope of his duties had changed.[2] *Id.*

---

[2]     The Court notes that Clark signed his performance evaluation on April 24, 2009, two months *after* he had submitted his PCQ on February 27, 2009. *Id.* at ¶ 79.

at ¶¶ 76-78.  In the section of the evaluation provided to express a disagreement, Clark did not indicate that he disagreed with his performance evaluation.  *Id.* at ¶¶ 80-82.

On December 3, 2009, the CSC's Division of State and Local Operations ("SLO") issued its determination based on its earlier desk audit (the "2009 Determination"), finding that Clark did not perform the duties required of a CSO 1 or a Public Health Representative 1.[3]  *Id.* at ¶¶ 83, 93.  Specifically, the determination explained that Clark did not "organize, coordinate, supervise and evaluate all phase's . . . of community treatment, rehabilitation, and prevention education programs for addiction," as required of a CSO 1.  *Id.* at ¶ 84. Rather, the determination described Clark's duties as "significantly descriptive of duties assigned to the specification for the title Community Service Officer 2," ("CSO 2"), and classified Clark as a CSO 2, with an effective date of January 2, 2010.  *Id.* at ¶¶ 96-97. This change in classification had "[t]he net effect of . . . a reduction of [his] salary and an elimination of yearly salary increment steps."  *Clark v. Czech (Clark I)*, No. 12-7763, 2015 WL 1117296, at *1 (D.N.J. Mar. 11, 2015).

On December 15, 2009, Clark appealed the 2009 Determination to the CSC's Division of Merit System Practices and Labor Relations (the "2009 Appeal").  *Id.* at ¶ 99. Clark argued on appeal that his responsibilities were similar to Walton's responsibilities and that because she was reclassified as a CSO 1, he, too, should have been reclassified.[4]

---

[3]     The Court notes that throughout the Statement of Uncontested Material Facts, the Public Health Representative title is used interchangeably with "Personnel Health Representative."  As a matter of consistency in this Opinion, the Court will refer to the position as Public Health Representative.

[4]     Clark, however, has indicated that he knows very little about Walton's 2009 desk audit.  *Id.* at ¶¶ 31-34.  Clark does not know (1) when Walton's desk audit was performed, *id.* at ¶ 32, (2) what was discussed during the desk audit, *id.* at ¶ 33, (3) whether Walton

5

*Id.* at ¶ 100.  Additionally, Clark maintained that, under the Equal Pay Act, he should be reclassified as a CSO 1.  *Id.* at ¶ 102.

On January 7, 2010, DHSS submitted a revised PCQ on Clark's behalf, with a cover letter supporting Clark's request to allow him to retain his Public Health Representative 1 title.  *Id.* at ¶¶ 103-05.  DHSS also indicated that it had assigned new duties to Clark appropriate with the Public Health Representative 1 title.  *Id.* at ¶ 106.  Clark and Wilkerson-LeConte signed the revised PCQ.  *Id.* at ¶¶ 107-08.

On April 5, 2010,[5] in response to the revised PCQ, the SLO determined that Clark's new duties were insufficient to warrant a different classification and that he would nevertheless be classified as a CSO 2, retroactively, effective January 2, 2010.  *Id.* at ¶¶ 109-10.  DHSS, in turn, responded with another letter on Clark's behalf on June 17, 2010, "strongly oppos[ing] the retroactive demotion penalty" and requesting an effective date of June 19, 2010.  *Id.* at ¶¶ 111-12.  On June 23, 2010, the SLO "corrected" its determination (the "Corrected Determination"), changing the effective date for Clark's reclassification to July 3, 2010, but still finding Clark's duties commensurate with a CSO 2.  *Id.* at ¶¶ 113-15.

Clark appealed the Corrected Determination on July 9, 2010.  *Id.* at ¶ 117.  Again, Clark alleged that Walton was reclassified as a CSO 1 and that their duties were "virtually the same."  *Id.*  Clark's appeal also referenced the Equal Pay Act.  *Id.* at ¶ 118.

---

received a reclassification letter, *id.* at ¶ 34, or (4) what may have been included in Walton's reclassification letter, *id.*

[5]     It is not clear from the Statement of Uncontested Material Facts whether this letter was dated April 4, 2010 or April 5, 2010.  *Id.* at ¶¶ 109-11.

On July 23, 2010, the CSC issued its Final Administrative Action (the "2010 FAA"), finding that Clark was properly classified as a CSO 2 based on his duties as outlined in the revised PCQ and his appeal. *Id.* at ¶¶ 119-22. The 2010 FAA also specifically rejected Clark's Equal Pay Act claim, citing to state administrative decisions that purportedly addressed similar claims that were denied. *Id.* at ¶ 126. Lastly, the 2010 FAA addressed Clark's claims regarding Walton, finding that Walton performed different duties than Clark. *Id.* at ¶ 130. Clark was informed that any review of the 2010 FAA was to be pursued in a judicial forum; Clark, however, chose not to appeal further. *Id.* at ¶¶ 132-34.

On January 19, 2011, as a result of organizational restructuring, which, Clark claimed altered his duties in the OTC,[6] Clark submitted a second PCQ to have his position reclassified as a CSO 1 (the "Second PCQ"). *Id.* at ¶¶ 135-36. Unlike Clark's First PCQ, this time, Clark's supervisor (who had changed to Mayer-Obermeier during the restructuring) supported his request. *Id.* at ¶¶ 137-39.

On October 25, 2011, a desk audit was conducted with Clark, and Mayer-Obermeier was interviewed. *Id.* at ¶¶ 144-45. At that time, Mayer-Obermeier indicated that Clark's current title of CSO 2 was neither appropriate for his duties nor appropriate based on the OTC's goals. *Id.* at ¶ 152.

On December 9, 2011, the SLO issued its determination (the "2011 Determination"), finding that Clark was properly classified as a CSO 2. *Id.* at ¶ 153. On December 23, 2011, Clark filed an appeal of the 2011 Determination (the "2011 Appeal"),

---

[6]     As a result of this organizational restructuring, the CTCP became the OTC.

claiming that Walton, Carter, and Enarusai worked under the CSO 1 title and that his duties were "substantially equal to" and "exceeded" their duties.  *Id.* at ¶¶ 161-62.  Again, Clark referred to the Equal Pay Act in his appeal.  *Id.* at ¶ 163.

On August 20, 2012, the CSC issued its Final Administrative Action regarding the 2011 Appeal (the "2012 FAA").  *Id.* at ¶ 164.  In the 2012 FAA, the CSC recounted Clark's Second PCQ and reviewed the 2011 Determination.  *Id.* at ¶¶ 165, 171.  Clark's duties were examined—through a "job analysis"—and compared to the duties of a CSO 1, CSO 2, and Program Development Specialist 1.[7]  *Id.* at ¶ 167.  Again, the CSC determined that Clark was properly classified as a CSO 2, notwithstanding his additional duties.  *Id.* at ¶¶ 166, 169, 171.  The CSC also rejected Clark's Equal Pay Act claim and cited state administrative decisions as its basis for doing so.  *Id.* at ¶ 175.  Once more, Clark was informed that review of the 2012 FAA must be pursued in a judicial forum.  *Id.* at ¶ 176.  But, Clark chose not to appeal the CSC's 2012 FAA.  *Id.* at ¶¶ 176-77.

## II.    Procedural History[8]

On December 20, 2012, Plaintiff filed his initial complaint, alleging employment discrimination against Robert Czech, acting Chairperson of the CSC ("Czech"), Henry Maurer, acting Director of the CSC Merit System Practices & Labor Relations Written Record Appeals Unit ("Maurer"), Joe Hill, Jr., acting Assistant Director of the CSC

---

[7]    During the October 25, 2011 desk audit, Clark mentioned that his duties could match the duties of a Program Development Specialist 1.  *Id.* at ¶ 159.

[8]    Unless otherwise noted, the following procedural history is taken from *Clark I*, 2015 WL 1117296; *Clark v. State of New Jersey Dep't of Health Office of Tobacco Control (Clark II)*, No. 12-7763, 2015 WL 8160579 (D.N.J. Dec. 7, 2015); and *Clark v. State of New Jersey Dep't of Health (Clark III)*, No. 12-7763, 2016 WL 4265724, at *1 (D.N.J. Aug. 12, 2016).

Division of State and Local Government Operations ("Hill"), and the OTC in violation of the Equal Pay Act, 29 U.S.C. § 206 *et seq.* After discovery, Czech, Maurer, Hill, and the OTC moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that (1) Plaintiff failed to state a claim under the Equal Pay Act; (2) Czech, Maurer, Hill, and the OTC are immune from suit pursuant to the Eleventh Amendment of the U.S. Constitution; (3) the Czech, Maurer, and Hill are entitled to qualified immunity and there is no individual liability for public officials under the Equal Pay Act; and (4) there was a legitimate business reason for the CSC's decision to not reclassify Plaintiff and/or such a merit-based decision is exempt from the Equal Pay Act. Plaintiff opposed the motion.

Subsequently, on March 10, 2015, the Court held (1) Plaintiff sufficiently stated a *prima facie* case under the Equal Pay Act against the OTC, and (2) Congress had abrogated New Jersey's immunity from suit with respect to the Equal Pay Act, and as such, Plaintiff's claim was not barred on sovereign immunity grounds. However, due to a lack of specific allegations against Czech, Maurer, and Hill, the Court granted Plaintiff leave to file an Amended Complaint to clarify the capacity in which he wished to bring suit against Czech, Maurer, and Hill.

On March 31, 2015, pursuant to the Court's Opinion, Plaintiff filed an Amended Complaint against the OTC and CSC. Notably, Plaintiff omitted Czech, Maurer, and Hill from the Amended Complaint, and thereby, these individuals were dismissed from the case. In his Amended Complaint, Plaintiff again alleged a violation of the Equal Pay Act. On May 26, 2015, the OTC and CSC moved to dismiss Plaintiff's Amended Complaint for

failure to state a claim, failure to exhaust administrative remedies, as well as issue preclusion and collateral estoppel. Plaintiff opposed the motion.

Thereafter, on December 7, 2015, the Court held that (1) Plaintiff was not afforded a full and fair opportunity to litigate his claims, so issue preclusion and collateral estoppel did not prevent Plaintiff from bringing his Equal Pay Act claim; (2) Plaintiff's failure to appeal the CSC's decision in state court did not prevent him from bringing his claims under the Equal Pay Act in federal court; (3) Plaintiff failed to allege a cause of action against the OTC; and (4) the CSC was not within the definition of an employer under the Equal Pay Act. Accordingly, the Court granted the motion to dismiss filed by the OTC and CSC, and dismissed Plaintiff's claims. However, the Court gave Plaintiff the option to amend his Amended Complaint to cure its pleading deficiencies and reopen the case. In so doing, the Court tolled the statute of limitations on Plaintiff's claims against the OTC and CSC.

On January 4, 2016, Plaintiff filed the Second Amended Complaint bringing an employment sex discrimination suit against Defendants in the instant matter, *i.e.*, the DOH and the OTC, alleging a violation of the Equal Pay Act and the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq*. The DOH and OTC moved to dismiss Plaintiff's Second Amended Complaint for failure to state a claim and Eleventh Amendment sovereign immunity, as well for summary judgment, pursuant to Federal Rule of Civil Procedure 56, for the same reasons. Plaintiff opposed both motions.

On August 12, 2016, the Court granted Defendants' motion to dismiss as to Plaintiff's FLSA claim and denied Defendants' motion to dismiss as to Plaintiff's Equal Pay Act claim. Specifically, the Court found that Eleventh Amendment sovereign immunity barred Plaintiff's FLSA claim. As to Plaintiff's Equal Pay Act claim, the Court

10

found that Defendants' motion to dismiss was premature because factual determinations were necessary to determine the merits of Defendants' affirmative defense under the Equal Pay Act[9] and therefore the Court denied Defendants' motion to dismiss.  With respect to Defendants' "motion to dismiss" under Rule 56, the federal rule governing motions for summary judgment, the Court denied the motion without prejudice for failure to adhere to Local Rule 56.1(a)—failure to submit a motion for summary judgment accompanied by a statement of material facts not in dispute.

Presently before the Court is Defendants' renewed motion for summary judgment, under Federal Rule of Civil Procedure 56, on Plaintiff's Equal Pay Act claim, the only remaining cause of action in the case.  And, Defendants have now submitted a Statement of Uncontested Material Facts in accordance with Local Rule 56.1(a).  In response, Plaintiff has submitted a letter "affidavit/affirmation in opposition to [Defendants'] motion" ("Affidavit").  Pl.'s Aff./Affirmation in Opp. to Def.'s Mot. for Summ. J., at p. 2, ¶ 1.  The highlights of Plaintiff's fifteen-page letter Affidavit are:

- "This is a flawed system as it relates to job duties evaluation." *Id.* at ¶ 19.

- "If Janis Mayer was interviewed she would have agreed with the fact that my [sic] position was substantially equal to the duties of Felicia Walton as

---

[9]        As discussed more fully below, claims based upon the Equal Pay Act follow a two-step burden-shifting paradigm: first plaintiff must establish a *prima facie* case under the Act, *Stanziale v. Jargowsky,* 200 F.3d 101, 107 (3d Cir. 2000) (citing *E.E.O.C. v. Delaware Dep't. of Health and Soc. Services,* 865 F.2d 1408, 1413–14 (3d Cir. 1989), and second, the employer has the burden of demonstrating the applicability of one of the four affirmative defenses identified in the Act. *See* 29 U.S.C. § 206(d)(1); *see also Stanziale,* 200 F.3d at 107.  To prevail on an affirmative defense, an employer must submit evidence to explain the employer's proffered reasons for the alleged wage disparity. *Stanziale,* 200 F.3d at 107–08.

she stated to me in the fall of 2010 when she became my immediate supervisor." *Id.* at ¶ 21.

- "The Department of Health at the time was aware of this flawed dual supervisor system and only allowed for the support of female coworker Felicia Walton and failed to support my audit despite knowing that my duties were substantially equal as confirmed by Felicia's primary supervisor and my secondary supervisor Janis Mayer." *Id.* at ¶ 22.

- "The facts are Felicia did not supervise anyone. . . . Felic[i]a also did not coordinate the REBEL program." *Id.* at ¶ 24.

- "The Department of Health [had a] flawed dual supervisor system at the time, and the closed Civil Service process did not afford me the opportunity to compare [my] duties . . . to female coworkers." *Id.* at ¶ 29.

- "These facts can only be determined by a fair trial not a closed process that makes determination[s] based on one supervisor's interview in which I have no idea what was stated nor have the opportunity to dispute any inconsistencies in such statements." *Id.* at ¶ 31.

- "Thus, the . . . Department of Health . . . willingly demoted me on July 10, 2010[,] despite [my] contention that one of [my] supervisors[,] Janis Mayer[,] disagreed with the conclusion as stated in the fall of 2010 and I [am] the only male [that] was adversely affected as [a] result of the flawed dual supervisor system and the closed Civil Service System that does not allow for a fair determination of duties in respect to female coworkers." *Id.* at ¶38.

- "To date I have not received any evidence that Felicia Walton, Carla Carter[,] or Irene Enarusai supervised anyone or coordinate any program." *Id.* at ¶ 118.

In sum, Plaintiff's letter Affidavit did not include admissible evidence to dispute material facts contained in Defendants' Statement of Uncontested Material Facts. Indeed, there was no evidence supporting his assertion of female co-workers' duties, or any evidence regarding deviations from the prescribed reclassification process. Plainly, Plaintiff failed to properly dispute any of the facts Defendants submitted as required by local Rule 56.1. *See Hernandez*, 608 F. App'x at 109–10; *Stringer*, 408 F. App'x at 580–81. Rather, Plaintiff's letter affidavit included nothing more than his opinions and conclusory assertions regarding the process that New Jersey prescribes, under Title 4A of the New Jersey Administrative Code, for state service employees seeking reclassification.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garges v. People's Light & Theatre Co.*, 529 F. App'x 156, 160 (3d Cir. 2013), *judgment entered*, No. 13-1160, 2013 WL 3455818 (3d Cir. June 28, 2013) ("Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law" (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))). If a fact is capable of affecting the substantive outcome of the litigation, it is "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" (internal citations omitted)); *Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, a court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. *Garges*, 529 F. App'x at 160. The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp.*, 477 U.S. at 322–23.

"Once the moving party has properly supported its motion for summary judgment, the nonmoving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Garges*, 529 F. App'x at 160 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). Indeed, the party opposing the motion may not rest on mere allegations or denials in his pleading, *see id.* at 160; rather, the nonmoving party must present actual evidence that creates a genuine issue as to a material fact for trial, *Anderson*, 477 U.S. at 248–49; *see also* Fed. R. Civ. P. 56(c)(1)(A) (explaining that in order for the party opposing summary judgment to show "that a fact cannot be or is genuinely disputed," he must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his factual position). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477

U.S. at 325.  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  After discovery, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23); *see also Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) ("The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue" (citing *Anderson*, 477 U.S. at 249)).  Importantly, in circumstances where the nonmoving party is *pro se*, such as here, "the court has an obligation to construe the complaint liberally." *Giles*, 571 F.3d at 322 (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)).

## II.    Equal Pay Act

"The Equal Pay Act prohibits employers from discriminating based on sex 'by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." *Fairclough v. Wawa, Inc.*, 412 F. App'x 465, 468–69 (3d Cir. 2010) (quoting 29 U.S.C. § 206(d)(1)).  "[C]laims based upon the Equal Pay Act . . . follow a two-step burden-shifting paradigm." *Stanziale*, 200 F.3d at 107 (citations omitted).  First,

the plaintiff must establish a *prima facie* "case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Id.* at 107 (citing *Delaware Dept. of Health and Soc. Services*, 865 F.2d at 1413–14). Once the plaintiff makes out a *prima facie* case, the burden of persuasion shifts to the employer to demonstrate one of the four affirmative defenses enumerated in the Act:

> (i)    a bona fide seniority system,
> (ii)   a merit system,
> (iii)  a system which measures earnings by quantity or quality of production, or
> (iv)   a differential based on any factor other than sex.

*Id.* at 107 (citing 29 U.S.C. § 206(d)(1)). "[T]o prevail at the summary judgment stage, the employer must prove at least one affirmative defense 'so clearly that no rational jury could find to the contrary.'" *Id.* at 107 (quoting *Delaware Dept. of Health and Soc. Services*, 865 F.2d at 1414). In so doing, an employer must "submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Id.* at 107–08.

## III.    Analysis

Defendants in this case argue that summary judgment is appropriate for two primary reasons. First, Defendants contend that Plaintiff's Equal Pay Act claim is time-barred.[10] Second, Defendants argue that Plaintiff has failed to make a *prima facie* case

---

[10]     In regard to Defendants' first argument, the Court notes that "[v]iolations of the Equal Pay Act are subject to a two-year, three-year if allegedly willful, statute of limitations." *Bullock v. City of Philadelphia*, 250 F. App'x 512, 514 (3d Cir. 2007) (citing 29 U.S.C. § 255(a)). A determination of the accrual of Plaintiff's cause of action is based on whether the alleged discrimination constitutes a "discrete" act or a "continuing

under the Equal Pay Act, and, even if Plaintiff has made a *prima facie* case, Defendants can demonstrate an affirmative defense that clearly explains Plaintiff's wage disparity.

In his Complaint, Plaintiff alleges that three of his female co-workers, Walton, Enarusai, and Carter, performed equal duties to him. All three of these co-workers were, at the time Plaintiff filed his Complaint, classified as CSO 1 and paid more than Plaintiff, who was classified as CSO 2. Plaintiff further alleges that, after a second reorganization within the DOH, he took over the same grant duties as the same three female co-workers, and even acted in a higher capacity than his female co-workers in creating program grant agreements and coordinating the majority of the functions of the Tobacco Age of Sale program. Despite alleging that his duties were, at the least, equal to his female co-workers, Plaintiff has remained classified as a CSO 2. Plaintiff alleges that his initial reclassification as a CSO 2, and continued classification in that role, has resulted in a reduction in salary

---

violation." *See id.* "Under the continuing violation theory, discriminatory acts that are not individually actionable *may* survive the limitations time bar." *Id.* (emphasis added) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). Whereas, "discrete acts that are individually actionable must be raised within the applicable limitations period, even if they relate to claims otherwise raised in a timely complaint." *Id.* (citing *O'Connor*, 440 F.3d at 127; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Here, Defendants argue that Plaintiff's reclassification was not willful and was a "discrete act," which is individually actionable only when it is raised within the two-year limitations period. *O'Connor*, 440 F.3d at 127. In that regard, because Plaintiff was effectively demoted on July 3, 2010, and Plaintiff filed his initial Complaint on December 20, 2012—more than two years from the reclassification—Defendants argue that his Equal Pay Act claim is time-barred. However, "[i]n this Circuit, sex based discriminatory wage payments constitute a 'continuing violation' of the Equal Pay Act, [and] the timeliness of an Equal Pay Act claim is measured from the date of an aggrieved employee's last paycheck." *White v. Cleary*, No. 09-4324, 2012 WL 924338, at *12 (D.N.J. Mar. 19, 2012), *aff'd*, 513 F. App'x 224 (3d Cir. 2013) (citing *Carenas v. Massey*, 269 F.3d 251, 257 (3d Cir. 2001); *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 843–44 (3d Cir. 1992)). Moreover, Plaintiff argues that he was aggrieved by the reclassifications process, which did not conclude until the 2012 FAA, which was issued on August 20, 2012. Accordingly, I find that Plaintiff's action is not time-barred, but instead, his claims are subject to dismissal on the merits.

and certain salary increments.   Thus, Plaintiff contends that Defendants committed a violation of the Equal Pay Act.

While these allegations were sufficient to survive Defendants' motion to dismiss, *see Clark I*, 2015 WL 1117296, at *4, the bar for summary judgment is higher due to the opportunity for discovery.  *Compare* Fed. R. Civ. P. 12(b)(6), *with* Fed. R. Civ. P. 56; *e.g.*, *Atl. City Assocs. LLC v. Carter & Burgess Consultants, Inc.*, No.05-3227, 2007 WL 2705149, at *4 (D.N.J. Sept. 14, 2007) (explaining that the standard for a motion to dismiss is more lenient than the standard for summary judgment); *Seidman v. Minnesota Mut. Life Ins. Co.*, 40 F. Supp. 2d 590, 596 (E.D. Pa. 1997) (finding that although the plaintiff's allegation was sufficient for "the more lenient requirements of a motion to dismiss," plaintiff was required to present evidence to support the same allegation to survive a motion for summary judgment).

To establish a *prima facie* case under the Equal Pay Act at the summary judgment phase, "plaintiff[ ] will have to sustain [his] burden of proving that [his] work and [Walton's, Enarusai's, and Carter's] work entailed substantially equal skill, effort, and responsibility and was performed under similar working conditions." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155 (3d Cir. 1985) (citations omitted).  To do so, "Plaintiff[ ] must establish [his] case by proving actual job content; by the same token the employer may not rely merely on the job description." *Id.*  Indeed, the relevant focus is on whether the work that was actually done was "substantially equal." *Id.*  Ordinarily, due to "the fact intensive nature of the inquiry, summary judgment [is] often . . . inappropriate." *Id.* at 156.

In this case, however, Plaintiff has proffered no evidence—except his own version of the facts.  In that regard, Plaintiff has failed to provide details on the duties and tasks of

18

Walton, Enarusai, and Carter.  Although discovery has completed, Plaintiff has failed to take their depositions or submit admissible evidence to support his contentions.  Instead, Plaintiff has submitted his opinions about his co-worker's duties and self-serving assertions, such as, he performed grant monitoring and that his female co-workers did as well, or neither Plaintiff nor his co-workers supervised anyone.  Moreover, Plaintiff's letter Affidavit complains that the desk audit process is unfair and that he was never allowed to show that his "duties were substantially equal to [his] female coworkers."  Pl.'s Aff./Affirmation in Opp. to Def.'s Mot. for Summ. J., at ¶ 32.  However, on this motion, this is precisely what Plaintiff needed to do, but he has not done so.  Thus, the Court is left with no basis to determine whether the female co-workers' duties were "equal" to Plaintiff's work.  *See id.*  Accordingly, Plaintiff has not sustained his burden of proof to establish a *prima facie* case of an Equal Pay Act claim.  Therefore, summary judgment is appropriate on this basis alone.

Even if Plaintiff had sufficiently made a *prima facie* case under the Equal Pay Act, Defendants have satisfied their burden in proffering an affirmative defense to explain Plaintiff's wage disparity resulting from his classification as a CSO 2.  *Stanziale*, 200 F.3d at 107.  Defendants argue that Plaintiff's classification was based upon "a merit system" and "a differential based on . . . factor[s] other than sex." 29 U.S.C. § 206(d)(1).

First, Defendants argue that the system set forth under the Civil Service Act, N.J.S.A. 11A:1-1 *et seq.*, which governs the CSC, is a merit system.  And, importantly, Defendants contend that Plaintiff's title was classified in accordance with its prescribed procedures.  Hence, the Court finds it necessary to provide some background on the Civil Service Act, as well as the functions and procedures of the CSC.

19

The CSC acts as an independent commission within the Department of Labor and Workforce Development, N.J.S.A. 11A:2-1, with the responsibility, among others, of assigning "titles among the career service, the senior executive service, and the unclassified service for positions in State service and political subdivisions." *In re Johnson*, 215 N.J. 366, 376 (2013) (citing N.J.S.A. 11A:3–1). In addition, the CSC "has broad reclassification powers." *Id.* In that regard, its "authority to assign and reassign titles includes the duty to '[e]nsure the grouping in a single title of positions with similar qualifications, authority and responsibility.'" *Id.* (quoting N.J.S.A. 11A:3–1). Additionally, the CSC may "reassign titles to appropriate positions." *Id.* (quoting N.J.S.A. 11A:3–1(d)).

Relevant here is the New Jersey Administrative Code—New Jersey's administrative regulations, which define the CSC's authority regarding job title classification, by specifying jobs' duties and prescribing the CSC's power to reclassify positions through "job analysis." *Id.* (citing N.J.A.C. 4A:3–3.2(b)(2); N.J.A.C. 4A:3–3.3(a)(1)). These regulations also provide the process for job audits to ensure accurate classification, *id.* (citing N.J.A.C. 4A:3–3.3(d)), and specifically set forth the process by which a state service employee may seek reclassification of his or her title through the submission of a PCQ desk audit. *See* N.J.A.C. 4A:3-3.5; N.J.A.C. 4A:3-3.9.

First, to be reclassified, a state service employee shall complete a PCQ and specify the title that he believes is appropriate for his duties, including an explanation for his reasoning. N.J.A.C. 4A:3-3.9(c)(1). The PCQ requires the employee's immediate supervisor to indicate whether he or she agrees or disagrees with the employee's description of his duties, the amount of time he spends on each duty, and the title the

20

employee proposes as appropriate to his duties. *Id.* If the supervisor disagrees, the supervisor is required to explain in writing the nature of the disagreement. *Id.* The PCQ must be signed by the employee and his supervisor. *Id.* Then, the supervisor shall forward the PCQ to the program manager/division director and, if necessary, he or she shall indicate his or her disagreement, explaining in writing the nature of the disagreement. *Id.* at 4A:3-3.9(c)(2). The program manager/division director shall also sign the PCQ. *Id.*

Next, an agency representative shall review the PCQ and, depending on the title the employee seeks, indicate whether the employee's existing title is proper, whether some of the employee's duties are inappropriate, or whether the employee should be placed at a different title. *Id.* at 4A:3-3.9(c)(4). If the employee seeking reclassification disagrees with the determination, he may file a grievance. *Id.* at 4A:3-3.9(c)(6). Then, a representative from the CSC shall review the grievance and "request additional information if needed, order a desk audit where warranted, and issue a written decision letter." *Id.* at 4A:3-3.9(c)(8). Where there is a disagreement with the proposed title, the CSC representative shall "include a summary of the duties of the position, findings of fact, conclusions, a notice to an employee or authorized employee representative of appeal rights to the [CSC], and a determination that" the employee's position is classified properly, some of the employee's duties are inappropriate, or the employee's position should be reclassified. *Id.* at 4A:3-3.9(c)(8)(ii).

In the event that the employee wishes to appeal the CSC's decision, the employee may do so within twenty "days of receipt of the decision letter and include copies of all materials submitted, the determination received from the lower level, statements as to which portions of the determination are being disputed, and the basis for appeal." *Id.* at

4A:3-3.9(e).  New information or arguments that were previously not presented shall not be considered.  *Id.*  The CSC may render its decision on the written record or appoint an independent classification reviewer to conduct an informal review.  *Id.* at 4A:3-3.9(e)(1).

Finally, "[t]he decision by the [CSC] is the final administrative determination."  *Id.* at 4A:3-3.9(e)(4).  Indeed,

> [w]hen the [CSC] exercises its authority to prescribe the qualifications for a position, courts are loathe to interfere. *Gloucester Cnty. Welfare Bd. v. N.J. Civil Serv. Comm'n*, 93 N.J. 384, 390 (1983).  In examining determinations made by the [CSC], courts will not interfere with reclassification decisions in the absence of "an affirmative showing of arbitrariness."[11]  *Mullin v. Ringle*, 27 N.J. 250, 256 (1959); *accord Carls v. Civil Serv. Comm'n*, 17 N.J. 215, 221 (1955).

*In re Johnson*, 215 N.J. at 377 (footnote added).  Notably, however, "deference to the expertise and discretion of an administrative agency, such as the [CSC], does not extend to a reclassification decision that does not demonstrate a thorough understanding of the duties of the incumbent or consultation with relevant employers."  *Id.* at 380.  Significantly, "[t]he [CSC's] task is 'to assure the continuance of the merit system and to provide a modern personnel system, thereby promoting efficiency in the conduct of public business and assuring fair and impartial treatment for all applicants for employment and all employees in the classified service.'"  *Gloucester Cnty. Welfare Bd.*, 93 N.J. at 392 (quoting N.J.A.C. 4:1–2).

Here, according to Defendants, the provisions of Title 4A of the New Jersey Administrative Code and the Civil Service Act, as described above, demonstrate that the

---

[11]    "[W]hen the [CSC] undertakes an audit of a position in the course of a classification or reclassification review, it must also account for all, not just some, of the tasks assigned to an employee.  When it picks and chooses some of the tasks performed by the employee but ignores or mischaracterizes others, the decision takes on attributes of an arbitrary and unreasonable action."  *In re Johnson*, 215 N.J. at 383–84.

CSC's classification procedure is part of a merit system.  Defendants argue that in assessing Plaintiff's PCQs, they followed the prescribed procedures in (1) reclassifying Plaintiff as a CSO 2, (2) the appeals process, and (3) the manner in which the CSC issued its final administrative actions.  Thus, because Plaintiff's reclassification was a result of the CSC's classification system—the merit system as set forth in Title 4A of the New Jersey Administrative Code—Defendants should be entitled to summary judgment.  The Court agrees.

Here, the record shows that both of Plaintiff's classification requests followed the procedures in Title 4A.  *See* N.J.A.C. 4A:3-3.9.  Indeed, Plaintiff filed two PCQs—the first in 2009 and the second in 2011.  The First PCQ was signed by Wilkerson-LeConte and Plaintiff; Wilkerson-LeConte submitted a cover letter indicating that she did not support Plaintiff's reclassification based on Clark's performance evaluation from the previous year.  *See* N.J.A.C. 4A:3-3.9(c)(1)-(3).  The Second PCQ was signed by Mayer-Obermeier and Plaintiff; Mayer-Obermeier indicated in her cover letter that she did support Plaintiff's reclassification.  *See id.*  In both PCQs, Plaintiff indicated that he sought to be reclassified as a CSO 1.  Both times, Plaintiff's respective supervisors were interviewed and desk audits were performed.  *See* N.J.A.C. 4A:3-3.9(c)(8).  During the 2009 appeal, the CSC determined that Plaintiff should be placed at a different title level, *i.e.*, CSO 2.  *See id.*  During the 2011 appeal, the CSC determined that Plaintiff's position was properly placed at the existing title level, CSO 2.  *See id.*  The focus of both reviews was on Plaintiff's duties and whether they matched those duties described in the job descriptions of a CSO 1, CSO 2, Public Health Representative 1, or Program Development Specialist 1, as well as the percentage of time Plaintiff spent on each duty. *See* N.J.A.C. 4A:3-3.9(c)(2).  After

each desk audit, the CSC's SLO issued its determination.  *See* N.J.A.C. 4A:3-3.9(c)(8).

Both times, the determination found that Plaintiff did not "organize, coordinate, supervise

and evaluate all phase's . . . of community treatment, rehabilitation, and prevention

education programs for addiction," Statement of Uncontested Material Facts on Def.'s

Mot. for Summary Judgment, at ¶ 84, as required of a CSO 1, and it found that Plaintiff

performed the duties of a CSO 2.  After both determinations, Plaintiff filed appeals.  *See*

N.J.A.C. 4A:3-3.9(e).  Subsequently, the CSC performed a "job analysis" and found that

Plaintiff was properly categorized as a CSO 2.  *See* N.J.A.C. 4A:3-3.9(e)(2).  Finally, the

CSC issued two final administrative determinations consistent with N.J.A.C. 4A:3-

3.9(e)(4).

    Indeed, Plaintiff's reclassification process tracked the procedures as set out in Title

4A of New Jersey's Administrative Code.  Plaintiff, however, argues that the CSC should

compare co-workers in its classification appeals process.  Because the procedure does not

involve side-by-side employee comparisons, Plaintiff believes the classification process is

"flawed" and not fair. [12]  From the record before the Court, I find that this process

constitutes a merit-based system and Plaintiff has not shown that this statutorily prescribed

process is flawed.

    During discovery, Plaintiff failed to obtain admissible evidence to show that his

reclassification was not based on the merit system set forth in Title 4A of the New Jersey

Administrative Code.   Instead, Plaintiff submitted unsupported arguments, containing

---

[12]     Plaintiff also contends that the "dual supervisor system" is flawed.  *See* Pl.'s
Aff./Affirmation in Opp. to Def.'s Mot. for Summ. J., at ¶¶ 20, 22.  This contention,
however, bears no relation on Plaintiff's Equal Pay Act claim and therefore will not be
discussed in this Opinion.

unsubstantiated opinions.  In fact, Plaintiff failed to submit evidence that may prove his claim, such as: (1) affidavits or depositions of his female co-workers with descriptions of their duties, (2) records from his desk audit or Walton's desk audit, (3) depositions of Wilkerson-LeConte or Mayer-Obermeier, (4) or any evidence that would show that the CSC failed to follow its prescribed procedures.  In that regard, Plaintiff failed to rebut Defendants' motion for summary judgment with facts in the record and chose to rest solely on conclusory and self-serving assertions.  Thus, Plaintiff's submission does not create a genuine dispute of material fact.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("Rule 56(e) provides that judgment 'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'  The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Jiminez v. All Am. Rathskeller*, Inc., 503 F.3d 247, 253 (3d Cir. 2007) ("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate"); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument").

Thus, based on the record before the Court, the classifications process applied to Plaintiff's PCQs was a merit-based system that was properly implemented.  Plaintiff's classification was based on "valid, non-sex-based reasons justifying the salary differential

. . . and since there is no evidence of pretext, [Plaintiff] cannot establish an Equal Pay Act violation." *Rhoades v. Young Women's Christian Ass'n*, 423 F. App'x 193, 198 (3d Cir. 2011).  Accordingly, the Court finds no need to address Defendants' second affirmative defense—that Plaintiff's classification was founded upon a differential based on factors other than sex.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's complaint is **DISMISSED**.


**DATED**:  November 17, 2017                                   /s/ Freda L. Wolfson
                                                                                     Freda L. Wolfson
                                                                                     U.S. District Judge